**In re BRUNDAGE–BONE CONCRETE PUMPING, INC., EIN: 84–0972141, Debtor.**

**In re JLS Concrete Pumping, Inc., EIN: 84–0972141, Debtor.**

**Nos. 10–10758 ABC, 10–10760 ABC.**

United States Bankruptcy Court, D. Colorado.

May 14, 2012.

David Wadsworth, Denver, CO, Douglas R. Haughey, Doyle, Haris, Davis & Haughey, Tulsa, OK, Gary D. Arnold, Arnold, Bleuel, LaRochelle & Matthew, Oxnard, CA, Harvey Sender, Denver, CO, James D. Cupples, Houston, TX, John L. Ruppert, Denver, CO, John B. Wasserman, Denver, CO, Kelly A. Silvester, Bountiful, UT, Kerry Osaki, Wheatley & Osaki, Orange, CA, Matthew T. Faga, Denver, CO, Paul E. Steen, Ryan, Rapp & Underwood, PLC, Phoenix, AZ, William G. Fig, Sussman Shank LLP, Portland, OR, for Debtors.

### ORDER DENYING MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM OF WELLS FARGO BANK, ET AL.

A. BRUCE CAMPBELL, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion for Allowance of Administrative Expense Claim filed on December 15, 2011, by Wells Fargo Bank, National Association; Wells Fargo Equipment Finance, Inc.; Keybank National Association; Key Equipment Finance Inc.; AIG Commercial Equipment Finance, Inc.; and Comerica Leasing Corporation ("Motion"). The Motion is uncontested.

In the Motion, Wells Fargo Bank and Wells Fargo Equipment Finance Inc., for itself and as successor in interest to Wachovia Financial Services, Inc. a/k/a First Union Commercial Corporation; Key Bank National Association; Key Equipment Finance, Inc.; AIG Commercial Equipment Finance, Inc.; and Comerican Leasing Corporation (collectively, the "Lender Group") request jointly that the Court award them administrative expenses in the amount of $875,000.00 pursuant to 11 U.S.C. § 503(b)(3)(D) and (b)(4) based on their claimed "substantial contribution"

to the bankruptcy estates of Brundage–Bone Concrete Pumping, Inc., and JLS Concrete Pumping, Inc. (jointly, "the Debtors"). The Lender Group claims that its collaborative, collective efforts to create and maintain cohesion among creditors and its cooperation in the Chapter 11 process, including the negotiation and drafting of plan language and related documents, amount to a substantial contribution to the bankruptcy estates of the Debtors. For the reasons stated below, the Court denies the Motion.

This case involved the bankruptcy reorganization of America's largest concrete pumping enterprise.[1] It has been a case that presented owners, management, lenders, consultants, employees, insurance carriers, vendors and accident victims with extraordinary, complex and interrelated challenges. These Debtors were crippled by the 2008 downturn in the construction sector and, by 2010, were faced with a precipitous shutdown of a business that had grown and thrived for more than two decades.

The backbone of the Debtors' business was some 500 vehicles equipped with mobile pumping units and other sophisticated construction equipment that frequently traveled among more than twenty states where the Debtors operated. The jurisdictions in which Debtors conducted business have varied regulations of, among other things, rolling stock, labor relations, insurance, and creditors' rights. Reorganization of this enterprise entailed other problems in addition to radically reduced demand in the marketplace. As with most Chapter 11 filers, working capital was unavailable. Brundage–Bone was caught in the middle of factually and legally intricate disputes among competing equipment lessors and secured creditors. The Debtors faced serious internal executive management conflicts. In the regular course of its affairs, the Debtors confronted in excess of sixty personal injury claims in multiple jurisdictions. How the Debtors restructured had multi-million dollar tax implications. Formulation of a joint reorganization plan, resulting in dramatic downsizing of a going concern, involved sometimes contentious, highly negotiated, sophisticated recapitalization of the debt and equity structures of the reorganized Debtors that dealt with each of these issues, all in the span of fifteen and one-half months.

■ The Court's role in this Chapter 11, as is frequently the case in successful[2] bankruptcy reorganization, was largely passive. Cooperative efforts of various parties in interest in Brundage–Bone resulted, through Chapter 11 plan confirmation, in preserving this enterprise as a going concern when it emerged from Title 11 proceedings. There can be little doubt

---

**1.** By local or regional standards, this was a large case. It involved almost three times the debt of the company reorganized in this court in the 1970's that was, at the time, the largest non-railroad bankruptcy reorganization filed in the country. Times have changed. The banking community in contemporary America teaches us what big really means when it comes to financial failure. Brundage–Bone's debt, while three times that of the notorious King Resources Company, was less than one two-thousandth (1/2000) that of investment bankers, who three years ago, filed for Chapter 11 relief in the Southern District of New York.

**2.** Success in the realm of Chapter 11 reorganization can be an illusive and varied concept, often defined by he who evaluates the process. Confirmation of a plan itself says little. Success may be a continued going concern, retained employment, mitigated credit loss, a surviving customer, or even an efficient winding up of an enterprise.

that the principals and professionals of members of the Lender Group, among others, played pivotal roles in the effort to reorganize Brundage–Bone. The Lender Group's continuing participation, expertise, judgment, and hard work clearly contributed to the outcome of this case. The issue before the Court is, did this effort by members of the Lender Group amount to a necessary, "substantial contribution" for purposes of allowing an administrative claim under sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code.

The statute states, in relevant part,

(b) ... [T]here shall be allowed administrative expenses ... including—

(3) The actual, necessary expenses [other than attorney and accountant fees] incurred by—

. . .

(D) a creditor ... in making a substantial contribution in a case under chapter 9 or 11 of this title;

. . .

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection. . . .

11 U.S.C. § 503(b).

The case law is not altogether helpful in providing guidance in applying this statute, as cases often simply conclude that the "contribution" in issue either is or is not sufficiently "substantial." See cases collected at *4 Collier on Bankruptcy* ¶ 503.10[5][a] & [b] nn. 29–45 (16th ed. 2011). *Collier's* commentary similarly offers little definitive assistance in discussing the "Standard for Determining a Substantial Contribution," noting that, "The principal factor is the extent of benefit to the estate." *Id.,* text at n. 30. In considering how much of a contribution is enough to bestow on a bankruptcy estate a "clearly demonstrable benefit," sufficient to justify a section 503(b) award, *Collier* notes the reticence of the courts in this arena:

An entity's active participation in the case, even if considerable in terms of time, effort and expense, and even if positive for the overall outcome, will not itself be sufficient to constitute a substantial contribution.

*Id.* Text at n. 31

■ Hesitation in awarding administrative expenses to creditors is not surprising. Expenses incident to active participation of parties with a substantial stake in achieving effective bankruptcy reorganization are not ordinarily worthy of reimbursement from the bankruptcy estate because such participation is par for the course—that which is expected; it is simply how the process is designed to work when it does, in fact, work.

■ A number of additional factors may explain a court's reluctance to award section 503(b)(3)(D) and (b)(4) professional reimbursement. Perhaps most frequently cited is concern with duplication in section 503(b) requests. See *e.g. In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1252 (5th Cir.1986); *In re AmFin Financial Corp.,* 468 B.R. 827 (Bankr.N.D.Ohio 2012). The statutory mandate of section 503(b)(3), that expenses be "necessary," dictates that redundant expenses are not reimbursable from a bankruptcy estate. The prospect of such duplication in the Brundage–Bone case is substantial and real. Debtors' section 327(a) bankruptcy counsel has been awarded professional compensation of some $753,000. Debtors'

special section 327(e) corporate and tax counsel has been awarded $855,000. Fees and expenses of counsel to the official unsecured creditors committee were reimbursed for a total of $368,000. Debtors' professional consultant/"Chief Turnaround Officer" collected fees and expenses of $955,000. In support of that fee application the Wells Fargo contingencies within the Lender Group filed a supporting statement noting,

> CRG has played a central and instrumental role in facilitating the reorganization of the Debtors on terms that are acceptable to creditors, and without CRG, there would likely have been no reorganization.

Docket # 1225 at p. 2.

There are a finite number of "central and instrumental" roles that can be supported by section 503(b) reimbursement in one reorganization.[3] Another creditor in this case whose involvement spanned a period of approximately six months before and one month after the bankruptcy petition was filed, applied for a section 503(b)(3)(D) and section 503(b)(4) award of $2,217,000. This claim settled, without objection, for an allowed administrative claim of $175,000, payable over five years, without interest, and an allowed general unsecured claim in the amount of $1,172,000.

A very practical concern in fielding section 503(b)(3)(D) and (b)(4) administrative expense claims, if these statutes are not narrowly construed, is the invitation to a "come one, come all" phenomenon. In many Chapter 11 cases that confirm a plan of reorganization, without the contribution of a wide variety of parties in interest, the likelihood of effective reorganization would be substantially diminished. This very case dramatically demonstrates this point.

In addition to five administrative expense awards, largely for contributions of professionals engaged by the Debtors or their creditors, the application now before the Court seeks professional fee reimbursement of another seven lender/lessors that have contributed to the case.[4] A variety of other parties in interest, through negotiation, compromise, or otherwise actively participating in disposition of complex aspects of this case, have contributed to the cause. These include, among others, Debtors' insurers and their counsel, personal injury claimants and their coun-

---

**3.** While the Court has every confidence in the professionalism of the Lender Group's counsel, in the face of multiple, unopposed, potentially duplicative fee requests, hazards of a "conspiracy of silence" referred to by Circuit Judge Edith Jones in the *Consolidated Bancshares* case come to mind. 785 F.2d at 1255.

**4.** The fact that several creditors are jointly applying for allowance of a single administrative priority claim somewhat masks the challenge that multiple claims of this nature present to the Court. Such a joint application also provides an alternative grounds for denial. The language of section 503(b)(3) and (b)(4) does not permit the collective application for fees by creditors unless those creditors are asking in a representative capacity as a recognized committee. Here, these several creditors were not acting as a committee when their claimed contributions were made; thus, they are not eligible to apply as a group for reimbursement. The statute requires that, in applying for reimbursement of an administrative expense claim, a creditor must identify its actual, specific expenses in making contributions to the bankruptcy estate. The Lender Group has made it impossible for the Court to discern the basis of the actual contribution of any individual member of the group or to weigh its relative contribution against another member's. Indeed, the Lender Group concedes as much, in that it asks the Court to award the $875,000, and let it parcel out the funds among its members without court oversight. The statute does not contemplate awarding fees for such collective action.

sel, at least one-half dozen other lenders and equipment lessors, and the Debtors' principal owners.

If every such contributor can properly lay claim to administrative priority status, the Bankruptcy Court may confront an inordinately difficult administrative challenge. Not only must it avoid rewarding redundancy of professional service at the estate's expense, other fundamental concerns of Title 11 come into play. The general order of payment scheme of the Bankruptcy Code is at issue. Each dollar of administrative expense awarded under section 503(b) is a priority that steps in front of the class of creditors or interest holders that is already last in line, thus diluting its participation in the reorganization process. Where administrative claims are for reimbursement of legal fees, section 503(b)(4) threatens to circumvent section 506(b). The latter section allows a creditor's collection costs only to the extent such a debt is supported by collateral value.

Often, as in this case, section 503(b)(3)(D) and (b)(4) administrative claims are sought largely or entirely for reimbursement of professional expenses.[5] Scrutiny of professional fees benefitting the bankruptcy estate is ordinarily conducted within the strict disinterestedness and disclosure arena of Bankruptcy Code section 327 and Bankruptcy Rule 2014. This is largely avoided with section 503(b)(3)(D) and (b)(4) administrative expense claims. See *In re Consolidated*

*Bancshares, supra,* at p. 1254, where the Fifth Circuit notes that awarding a particular administrative claim for professional fees would "thwart" the strict provisions of the Bankruptcy Code governing professional compensation.

■ The potential hazards in liberal allowance of administrative priority claims of creditors under section 503(b) do not preclude allowance of such claims in limited circumstances. If the creditor's contribution results from activity apart from the ordinary give and take of the Chapter 11 process, it can be allowed without raising the concerns discussed above. For example, an over-secured creditor might pay for repair of its collateral or pay a senior lien on or for rezoning of property in which the estate has substantial equity. The cost to the creditor is easily justified as a priority administrative expense if it makes "a substantial contribution in a case."

■ Similarly, circumstances may occur where the debtor's or trustee's own professionals abdicate or lack competence, and some of their expected functions are effectively performed by professionals of a creditor.[6] Where this occurs, an award to the creditor under section 503(b) may have fewer adverse implications than where the creditor and its professionals perform their conventional roles in the Chapter 11 case, resulting in benefit to all concerned.

The Lender Group's priority administrative expense application presents none of

---

5. Expenses of a creditor for lawyer and accountant fees cannot, in and of themselves, support an administrative expense claim for making a substantial contribution in a Chapter 11 case. Section 503(b)(3) expressly excepts from reimbursable creditors' expenses costs of professional services rendered by an attorney or an accountant. Such professional fees are allowable as administrative priority expenses under section 503(b)(4) only if they are incident to a separate substantial contribution made by a creditor in a case, under section 503(b)(3).

6. This case presented not the slightest indication of any such circumstances.

the limited circumstances in which this Court can properly award a creditor reimbursement of its professional expense in contributing to this case. The Court concludes that the nature and extent of the Lender Group's contribution to this case is not such as to qualify it for reimbursement of a necessary expense for a substantial contribution pursuant to sections 503(b)(3)(D) and (b)(4) of the Bankruptcy Code.

For the foregoing reasons, it is

ORDERED that the Motion for Allowance of Administrative Expense Claim of Wells Fargo Bank, National Association; Wells Fargo Equipment Finance, Inc.; Keybank National Association; Key Equipment Finance Inc.; AIG Commercial Equipment Finance, Inc.; and Comerica Leasing Corporation is DENIED.